561 P.2d 476

**Patricia G. CHINO, Plaintiff-Appellee,**

v.

**Mark R. CHINO, Defendant-Appellant.**

**No. 10768.**

Supreme Court of New Mexico.

March 21, 1977.

**204**

Fettinger & Bloom, Kim J. Gottschalk, Alamogordo, for defendant-appellant.

Shipley, Durrett, Conway & Sandenaw, Wayne A. Jordan, Alamogordo, for plaintiff-appellee.

## OPINION

PAYNE, Justice.

The district court of Otero County granted an order for the removal of the appellant from a home owned by his mother, the appellee. Appellant contests the court's jurisdiction of his person and of the subject matter.

The appellee, Patricia G. Chino, is an enrolled member of the Santa Clara Indian Pueblo but owns a home located within the Mescalero Apache Indian Reservation. The home had been acquired during her marriage to the appellant's father, a member of the Mescalero Apache Tribe. It was awarded to her in duplicate divorce proceedings in the Mescalero Apache Tribal Court and in the state district court in Otero County.

The appellant, Mark Chino, is an enrolled member of the Mescalero Apache Tribe. After his parents' divorce he moved into his mother's vacant home against her wishes. His mother brought suit in the district court in Otero County for forcible entry and wrongful detainer of her home.

The only issue with which we need concern ourselves on this appeal is whether state courts have jurisdiction over forcible entry and wrongful detainer actions involving fee patent lands lying within an Indian reservation.

Both federal and state courts have wrestled with jurisdictional problems between states and Indian tribes. These efforts to bring order to conflicting philosophies are made more difficult by increased interaction between Indians and non-Indians and by changing Indian policies enacted by Congress. See Canby, Civil Jurisdiction and the Indian Reservation, 1973 Utah L.Rev. 206; Kane, Jurisdiction over Indians and Indian Reservations, 6 Ariz.L.Rev. 237 (1965).

In 1832 Chief Justice Marshall first enunciated the principle that tribal jurisdiction was complete and that states were without jurisdiction unless some affirmative act of the federal government or the tribe operated to confer jurisdiction upon the state.

*Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832). Marshall's recognition of Indian tribal sovereignty was based upon the principle that tribal self-government is inherent. Using that criterion, the initial inquiry when questions of state authority over matters arising upon reservations were presented, was whether any affirmative act of the tribe or of the federal government allowed the state's intrusion into tribal affairs. The United States Supreme Court subsequently modified Justice Marshall's approach and allowed states to exercise their authority in some cases where essential tribal relations were not involved and where the rights of Indians would not be jeopardized. *United States v. Candelaria,* 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023 (1925).

In a civil suit against reservation Indians for goods sold them by a non-Indian operating a store on a reservation, the United States Supreme Court held that the state court lacked jurisdiction. *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). The court stated:

> Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them (citations omitted).

This language has led to what has become known as the "infringement test." *State Securities, Inc. v. Anderson,* 84 N.M. 629, 506 P.2d 786 (1973), (dissenting opinion); Ransom and Gilstrap, Indians—Civil Jurisdiction in New Mexico—State, Federal and Tribal Courts, 1 N.M.L.Rev. 196 (1971). New Mexico has recognized and applied this test. *Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe,* 84 N.M. 343, 503 P.2d 323 (1972); *Montoya v. Bolack,* 70 N.M. 196, 372 P.2d 387 (1962).

Shortly after *Williams v. Lee,* supra, the United States Supreme Court decided *Kake Village v. Egan,* 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), which involved an attempt by the State of Alaska to regulate the fishing practices of non-treaty, non-reservation Alaskan Indians. In allowing the state to exercise jurisdiction the Supreme Court had to deal with Section 4 of the Alaskan Statehood Act.[1] Under that Act, Alaska had disclaimed all right and title to, and the United States had retained absolute jurisdiction and control over any lands or other properties held by the Indians. A similar disclaimer can be found in Section 2 of the New Mexico Enabling Act.[2]

Interpreting the disclaimer clause in *Kake Village,* supra, the United States Supreme Court came to the conclusion that absolute jurisdiction is not necessarily exclusive jurisdiction. This rationale was relied upon by this court in *State Securities, Inc. v. Anderson,* supra, to extend state jurisdiction, but recent decisions of the United States Supreme Court have narrowed its application. In *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 176, 93 S.Ct. 1257, 1264, 36 L.Ed.2d 129, 138 (1973), the court noted that the Indians in Kake Village were non-reservation Indians, and refused to extend the concept of concurrent federal and state jurisdiction to cases which arise in areas set aside by treaty for the exclusive use and control of Indians.

More recent cases shift the focus of analysis to the relevant treaties and statutes governing the tribes, and whether or not they would preempt state jurisdiction. *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 1634, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *McClanahan v. Arizona State Tax Comm'n,* supra; *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). Although these cases concern the power of the state to tax Indians and Indian related activities, they indicate a reluctance to extend state jurisdiction.

---

1. Pub.L. No. 85–508 July 7, 1958, 72 Stat. 339, amended by Act of June 25, 1959, Pub.L. No. 86–70, § 2A, 73 Stat. 141.

2. Repl. Vol. 1, 168, 170, N.M.S.A.1953; 36 Stat. 557 Ch. 310.

■ Applying the preemptive approach as used in *Moe, McClanahan* and *Mescalero,* supra, we must examine the treaties and statutes governing the Mescalero Indian tribe. The relevant treaty here is the Treaty of 1852 between the United States and the Apache Nation of Indians. 10 Stat. 979. Article I of that treaty states:

Said nation or tribe of Indians through their authorized Chiefs aforesaid do hereby acknowledge and declare that they are lawfully and exclusively under the laws, jurisdiction, and government of the United States of America, and to its power and authority they do hereby submit.

In addition, the New Mexico Enabling Act, supra, disclaimed jurisdiction over the Indians. The State of New Mexico has declined to assume jurisdiction over the Indian reservations within the state by failing to take affirmative steps under Public Law 280,[3] enacted by Congress in 1953, or under more recent congressional acts.[4] Thus the treaties and statutes applicable in this case preclude the state from exercising jurisdiction over property lying within the reservation boundaries.

■ In applying the "infringement test" the same conclusion is reached. In considering this test it is helpful to summarize certain criteria to determine whether or not the application of state law would infringe upon the self-government of the Indians. These are the following: (1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) what is the nature of the interest to be protected.

■ An action for forcible entry and unlawful detainer deals directly with the question of occupancy and ownership of land. When the land lies within a reservation, enforcement of the owner's rights to such property by the state court would infringe upon the governmental powers of the tribe, whether those owners are Indians or non-Indians. Civil jurisdiction of lands within the reservation remains with the tribe. *Kennerly v. District Court of Montana,* 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). The fact that the land upon which plaintiff's house was located is fee patent land, presumably granted under the Indian Allotment Act,[5] is immaterial. *Moe v. Confederated Salish and Kootenai Tribes,* supra; *Seymour v. Superintendent,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962). Even though the Mescalero tribal law makes no provision for a wrongful entry and detainer action, the state may not assume jurisdiction without congressional or tribal authorization. Indian customs and traditions may dictate different approaches than that which the state may use. For a state to move into areas where Indian law and procedure have not achieved the degree of certainty of state law and procedure would deny Indians the opportunity of developing their own system.

The decision of the trial court is reversed and the case is remanded with instructions to dismiss for lack of jurisdiction.

IT IS SO ORDERED.

OMAN, C. J., and SOSA, J., concur.

---

**3.** 28 U.S.C. § 1360 (1970).

**4.** 25 U.S.C. §§ 1321 and 1322 (1970).

**5.** 25 U.S.C. §§ 331–34 (1970).