660 P.2d 590

STATE of New Mexico, ex rel., DE-
PARTMENT OF HUMAN SERV-
ICES, Petitioner-Appellant,

v.

Jimmy Andrew JOJOLA,
Respondent-Appellee.

No. 14116.

Supreme Court of New Mexico.

March 16, 1983.

Paul Bardacke, Atty. Gen., E. Carrell Ray, Asst. Atty. Gen., Albuquerque, for petitioner-appellant.

Anthony F. Little, Bernalillo, for respondent-appellee.

Michael Taylor, Reservation Atty., Nespelem, Wash., amicus curiae.

## OPINION

RIORDAN, Justice.

State of New Mexico's Department of Human Services (DHS) filed a paternity petition in the District Court of Bernalillo County seeking a judgment to determine Jimmy Andrew Jojola (Jojola) to be the natural father of Jonathan Abeita and require Jojola to make monthly payments for his support. Jojola filed a motion to dismiss for lack of personal and subject matter jurisdiction. The district court dismissed the petition for lack of subject matter jurisdiction. DHS appeals. We reverse.

The issues on appeal are:

I. Whether the New Mexico district court has personal jurisdiction in this cause of action.

II. Whether the New Mexico district court has subject matter jurisdiction in this cause of action.

On October 13, 1979, Jonathan Abeita was born to Diane Abeita (Abeita). Both are members and residents of the Pueblo of Isleta Indian Reservation (Isleta Pueblo). In October 1979, Abeita applied for and was approved for public assistance under New Mexico's Public Assistance Act. §§ 27–2–1 through 27–2–36, N.M.S.A.1978 (Repl.Pamp. 1982). As required by law, Abeita identified Jojola, who is also a member and resident of Isleta Pueblo, as the natural father of her son. 42 U.S.C. § 602(a)(26) (1976 & Supp. IV 1980).

On April 2, 1981, DHS filed an action against Jojola to establish paternity and to compel support for Jonathan Abeita who was receiving public assistance. 42 U.S.C. §§ 651 through 663 (1976 & Supp. IV 1980); § 27–2–28; § 40–5–7, N.M.S.A.1978. On May 21, 1981, a copy of the petition and summons was served upon Jojola at the campus of Albuquerque Technical Vocational Institute which is located outside of the exterior boundaries of the Isleta Pueblo. On October 13, 1981, Jojola filed a motion to dismiss for lack of subject matter and personal jurisdiction. On November 23, 1981, the district court dismissed the action for lack of subject matter jurisdiction.

### I. *Personal Jurisdiction*

██ Bastardy proceedings are generally considered transitory. 10 C.J.S. *Bastards*

§ 57, at 154 (1938). Transitory actions are not confined to any particular state. 21 C.J.S. *Courts* § 38, at 47 (1940). When a cause of action is transitory, any court of competent jurisdiction, where jurisdiction is obtained over the defendant, may entertain the cause of action regardless of where the parties were at the time of the cause of action or where the cause of action arose. *Schultz v. Union Pac. R. Co.,* 118 Cal.App.2d 169, 257 P.2d 1003 (Dist.Ct.App.1953); *Mutzig v. Hope,* 176 Or. 368, 158 P.2d 110 (1945); *Gibbons v. Brimm,* 119 Utah 621, 230 P.2d 983 (1951). Therefore, a paternity suit may be brought wherever the putative father is placed under the personal jurisdiction of the court. § 40–5–9, N.M.S.A.1978; *see Surber v. Pearce,* 97 R.I. 40, 195 A.2d 541 (1963).

■ Jojola was served with a copy of the petition and summons outside the Isleta Pueblo and within the State of New Mexico. He was, therefore, subject to the personal jurisdiction of the district court. Jojola's status as an Indian makes no difference. Indians that go beyond the reservation boundaries are subject to the nondiscriminatory state laws otherwise applicable to all citizens of a state. *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973); *Wisconsin Potowatomies, Etc. v. Houston,* 393 F.Supp. 719 (W.D.Mich.1973). Therefore, the district court had personal jurisdiction over Jojola.

## II. *Subject Matter Jurisdiction*

■ Jojola asserts that the Isleta Pueblo has *exclusive* jurisdiction to regulate the domestic relations of its members. The test for determining if a state court has jurisdiction over causes of actions involving Indian matters is set forth in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). *Williams v. Lee, supra* at 220, 79 S.Ct. at 270, states that:

> Essentially, absent governing Acts of Congress, the question has always been whether the state actions infringed on the right of reservation Indians to make their own laws and be ruled by them.

This test is principally applicable in situations involving a non-Indian party. *Fort Mojave Tribe v. San Bernardino County,* 543 F.2d 1253 (9th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977). In these situations, both a tribe and a state can fairly claim an interest in asserting their respective jurisdictions. Therefore, the *Williams* test was designed to resolve the conflict by providing that a state could protect its interest up to the point where tribal self-government would be affected. *Fort Mojave Tribe v. San Bernardino County, supra.*

■ The first part of the *Williams* test is whether there are any Acts of Congress that govern this area. We have found none and neither party has directed our attention to any authority. The closest federal statute is 25 U.S.C. § 1911 (Supp. V 1981). Section 1911(a) states that:

> An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe * * *.

However, this section deals with the adoption and foster care of Indian children and not paternity determination and child support enforcement when a state is a party and the other party is an Indian.

■ The second part of the *Williams* test directs this Court to determine whether pursuing the state action in state court infringes on the right of reservation Indians to make their own laws and be ruled by them. A state cannot extend its powers into Indian country if it will infringe upon the right of the Indian people to govern themselves. *White v. Califano,* 437 F.Supp. 543 (D.S.D.1977), *aff'd,* 581 F.2d 697 (8th Cir.1978). *Chino v. Chino,* 90 N.M. 203, 561 P.2d 476 (1977), sets forth a criteria for determining whether state involvement would infringe upon Indian self-government. The criteria is as follows:

(1) whether the parties are Indians or non-Indians,

(2) whether the cause of action arose within the Indian reservation, and

(3) what is the nature of the interest to be protected.

*Id.* at 206, 561 P.2d at 479.

 When Abeita applied for public assistance for her minor child, in accordance with 42 U.S.C. § 602(a), she assigned her right to support to DHS. *Martinez v. Martinez,* 98 N.M. 535, 650 P.2d 819 (1982). As we stated in *Martinez,* DHS is now subrogated to Abeita's position, and DHS has the right to collect the support obligation directly from the father. Therefore, the cause of action is between DHS, a non-Indian, and Jojola, the putative father, an Indian. Also, the cause of action arose outside of the reservation when Abeita filed and obtained public assistance and assigned her support rights to DHS.

The last criteria we must look at is what interest is to be protected. Jojola asserts that the interest to be protected is the tribe's right to regulate the domestic affairs of the tribe. However, DHS asserts that the interest to be protected is the State's public assistance program. DHS must abide by state and federal regulations in their assistance program. The federal government has set forth certain requirements in assistance programs, such as the collection of assistance from the non-custodial parent. Therefore, the interest to be protected is the uniform enforcement of paternity determination and child support obligations within this State.

 In New Mexico, there are twenty-three separate Indian jurisdictions which may have different statutes and rules. To require the State of New Mexico to proceed to the various tribal courts of the State would defeat and be a burden on the aims of the public assistance program. Therefore, we find no interference with tribal self-government as long as DHS does not assert jurisdiction within the reservation.

We hold that the district court *did* have personal and subject matter jurisdiction over Jojola. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

PAYNE, C.J., and FEDERICI and STOWERS, JJ., concur.

SOSA, Senior Justice, respectfully dissenting.