409 N.W.2d 460 (1987)
STATE of Iowa ex rel. DEPARTMENT OF HUMAN SERVICES as Next Friend to Ira Dean WHITEBREAST, Jr., Appellant,
v.
Ira D. WHITEBREAST, Sr., Appellee.
No. 86-340.
Supreme Court of Iowa.
July 22, 1987.
Thomas J. Miller, Atty. Gen., and Gordon E. Allen, Sp. Asst. Atty. Gen., and Susan K. Geffe, Sp. Asst. Co. Atty., for appellant.
Robert N. Clinton, Iowa City, and Eleanor E. Lynn, Cedar Rapids, for appellee.
Roger R. Schoell, Marshalltown, amicus curiae for Sac & Fox Tribe of the Mississippi in Iowa.
Considered en banc.
NEUMAN, Justice.
Ira Dean Whitebreast, Jr., his mother Becky Youngbear, and his father, Ira Dean Whitebreast, Sr. are all enrolled members of the Sac and Fox Tribe of the Mississippi, residing on the tribe's settlement in Tama, Iowa. Since April 1, 1985, Becky Youngbear has been receiving Aid to Dependent Children (ADC) for Ira Jr. On May 9, 1985, the State of Iowa, through its Child Support Recovery Unit (CSRU), filed in district court a Petition for Reimbursement *461 and Future Support naming Ira Sr. as the respondent. The petition sought both reimbursement for ADC previously paid on Ira Jr.'s behalf and an order for future support. Ira Sr. responded with a special appearance, claiming his status as an Indian living on the settlement deprived the district court of subject matter jurisdiction to consider the controversy.
The decisive issue raised before the district court and now confronting us on appeal is whether 25 U.S.C.A. section 1322 (1983) confers upon the Iowa district court jurisdiction to hear and decide a petition brought by the State of Iowa to recoup from a reservation Indian ADC funds advanced for the support of his child. The district court concluded that the State's cause of action fell outside the limited scope of private civil adjudicatory jurisdiction over tribal Indians conferred by Congress on the State of Iowa and dismissed the petition. We affirm.
Resolution of the controversy can properly be understood only against the backdrop of tribal sovereignty and federal Indian law. Historically, Indian territories were generally deemed beyond the legislative and judicial jurisdiction of state governments. Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, 476 U.S. 877, ___, 106 S.Ct. 2305, 2307, 90 L.Ed.2d 881, 886 (1986). This policy of leaving Indians free from state jurisdiction and control was first articulated by the United States Supreme Court in 1832 when Chief Justice Marshall declared that Indian nations were "distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guaranteed by the United States." Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 557, 8 L.Ed. 483, 499 (1832). "It followed from this concept of Indian reservations as separate, although dependent nations, that state law could have no role to play within the reservation boundaries." McClanahan v. Arizona Tax Comm'n, 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129, 133 (1973).
This federal restriction on state jurisdiction over Indian country was modified, however, in 1953 with Congress' enactment of the Act of Aug. 15, 1953, Pub.L. No. 83-280, § 4, 67 Stat. 588, (codified as amended at 25 U.S.C.A. § 1322), which is commonly known as Public Law 280. The law, described as representing "the primary expression of federal policy governing the assumption by states of civil and criminal jurisdiction over the Indian nations," Three Affiliated Tribes, 476 U.S. at ___, 106 S.Ct. at 2310, 90 L.Ed.2d at 890 states in pertinent part:
The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume... such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.
Nothing in this section shall authorize the alienation, encumberance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States, or shall authorize regulation of the use of such property in a manner inconsistent with any federal treaty, agreement, or statute, or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.
Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise *462 of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.
25 U.S.C.A. § 1322 (a-c) (1983).
Five states (California, Minnesota, Nebraska, Oregon and Wisconsin) and the Alaska Territory were the original recipients of this congressional delegation of jurisdiction. At the same time, the remaining states were given the option of assuming jurisdiction over most crimes and civil matters arising throughout most of the Indian country within their borders. F. Cohen, Handbook of Federal Indian Law 362 (1982 ed.). Ten states, including Iowa, acted to accept some degree of jurisdiction under the Act's provisions. An amendment to Public Law 280 in 1968 made subsequent assumptions of jurisdiction subject to Indian consent in a special election; only one state acceptance has occurred since the amendment. Id. at 363.
Iowa accepted full Public Law 280 jurisdiction, using language nearly identical to that found at 25 U.S.C.A. section 1322, tailored to fit civil causes of action "arising within the Sac and Fox Indian settlement in Tama County." Iowa Code § 1.12 (1985); see also §§ 1.13-1.14. The decision before us turns on whether the scope of Iowa's civil jurisdiction over tribal Indians within its borders, as limited by federal law, has been correctly interpreted by the trial court. In seeking the answer to that question we are guided by a series of United States Supreme Court decisions interpreting Public Law 280 in the context of a civil action brought by the state.
The leading case is Bryan v. Itasca County Minnesota, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). At issue in Bryan was whether Congress intended Public Law 280 to serve as a vehicle for a state's imposition of a personal property tax on an Indian's mobile home situated on the reservation. Minnesota had declared Public Law 280 to be a clear grant of the power to tax. A unanimous Supreme Court disagreed, concluding that an examination of the legislative history behind Public Law 280 evinced no intent by Congress to confer upon the states any authority to tax Indians or Indian property on reservations. "[H]ad [Congress] intended to confer upon the States general civil regulatory powers, including taxation, over reservation Indians, it would have expressly said so." Id., 426 U.S. at 390, 96 S.Ct. at 2112, 48 L.Ed.2d at 722. Moreover, the court held "section 4(b) in its entirety may be read as simply a reaffirmation of the existing reservation Indian-Federal Government relationship in all respects save the conferral of state-court jurisdiction to adjudicate private civil causes of action involving Indians." Id., 426 U.S. at 291, 96 S.Ct. at 2112, 48 L.Ed.2d at 722-23.
In a very recent opinion confirming the vitality and breadth of Bryan, the Supreme Court struck down California's attempt to enforce its gambling laws on the Cabazon Indian reservation, concluding that such laws were regulatory, not criminal in nature and therefore outside the scope of jurisdiction conferred by Public Law 280. California v. Cabazon Band of Mission Indians, 480 U.S. ___, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). The court's reliance on the principles articulated in Bryan clearly focuses our attention in the appeal before us:
In Bryan v. Itasca County, 426 U.S. 373 [96 S.Ct. 2102, 48 L.Ed.2d 710] (1976), we interpreted § 4 to grant States jurisdiction over private civil litigation involving reservation Indians in State court, but not to grant general civil regulatory authority. Id. at 385, 388-390 [96 S.Ct. at 2110-2111]. We held, therefore, that Minnesota could not apply its personal property tax within the reservation. Congress's primary concern in enacting Pub.L. 280 was combatting lawlessness on reservations. Id. at 379-380 [96 S.Ct. at 2106-2107]. The Act plainly was not intended to effect total assimilation of Indian tribes into mainstream American society. Id. at 387 [96 S.Ct. at 2110]. We recognized that a grant to States of general civil regulatory power over Indian reservations would result in the destruction of tribal institutions and *463 values. Accordingly, when a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under § 2 [providing for State jurisdiction over certain criminal proceedings], or civil in nature, and applicable only as it may be relevant to private civil litigation in state court.
480 U.S. at ___, 107 S.Ct. at 1087-88, 94 L.Ed.2d at 254 (emphasis added).
Turning to the case before us, the district court concluded that the action commenced by the state against Ira Whitebreast, Sr. to recoup ADC payments made for the benefit of his son did not fairly come within the ambit of "private civil litigation." Secondly, the court characterized the reimbursement scheme as a method of taxation, prohibited by Bryan. Finally, the court held that the action initiated by the State to adjudicate and regulate a parent-child relationship impermissibly infringed on a matter reserved to the tribe.
Addressing first the district court's third ground for dismissal, we conclude that if this were a truly private cause of action brought by one Indian to enforce a support order against another, either Indian or non-Indian, we would not decline to adjudicate the merits of the controversy. Notwithstanding the interference with personal tribal relationships such an adjudication would entail, the Supreme Court in Bryan conceded that Congress intended Public Law 280 to authorize state court resolution of disputes involving marriage and divorce and at least one other Public Law 280 state, Idaho, has followed suit. Bryan, 426 U.S. at 383 n. 10, 96 S.Ct. at 2108 n. 10, 48 L.Ed.2d at 718 n. 10 (quoting Israel & Smithson, Indian Taxation, Tribal Sovereignty and Economic Development, 49 N.D.L.Rev. 267, 296 (1973)); Sheppard v. Sheppard, 104 Idaho 1, 655 P.2d 895 (1982); Fisher v. Fisher, 104 Idaho 68, 656 P.2d 129 (1982).
But the public character of the Child Support Recovery Unit, designated under Iowa Code chapter 252B to carry out the mandates of the Uniform Support of Dependents Law found at chapter 252A, seems to us inescapable. Though its obligations are statutorily described in terms of "services" to be furnished in the enforcement of child support awards,[1] CSRU's function is clearly regulatory in nature. Its duties are defined and shaped by a host of administrative regulations. See generally 441 Iowa Admin.Code ch. 95-97 (1987). Its public, regulatory character is apparent in those statutory provisions compelling assignment of a recipient's recovery to the state[2], promulgating rules necessary to assist the Department of Revenue in implementing a setoff against a debtor's income tax refund[3], determining periodically whether an individual receiving unemployment compensation benefits owes a support obligation "being enforced by the unit,"[4] and advising the court of the "financial interest of the state in the proceeding."[5] Combined, these provisions reveal pervasive state control, exceeding a private adjudication of paternity or award of child support.
In State ex rel. Brecht v. Brecht, 255 N.W.2d 342, 345 (Iowa 1977) this court recognized that section 252A.5(5) "equates the rights of the department with the rights of the children" in need of support. Similarly, in State ex rel. Blakeman v. Blakeman, we recognized the right of the CSRU to pursue an increase in a child support award notwithstanding the custodial parent's neutrality or disinterest in the matter. 337 N.W.2d 199, 203 (Iowa 1983). While both cases confirm the notion that the CSRU "stands in the shoes" of the minor child, the status of the agency as a public body, "exercising the state's duty as parens patriae" is never abandoned. Thus, we reject the state's contention on this *464 appeal that its petition filed "as next friend to Ira Dean Whitebreast, Jr." has transformed its public, regulatory duty into a private civil cause of action recognized by the Bryan decision as coming within state court jurisdiction. As succinctly stated by the district court,
[c]learly it is the state which initiated this action and the state which will benefit by payments to the state treasury. It is hard to imagine this case as a "private civil cause of action involving Indians."
Moreover, we agree with the district court's conclusion that the collection scheme contemplated by chapter 252B, if not technically amounting to taxation, certainly bears a striking resemblance. In aid of dependents who are both recipients and nonrecipients of public assistance, application fees and costs for services rendered are, by statute, deductible from the amount of support money recovered by the CSRU and then apportioned seventy percent to the CSRU and thirty percent to "the treasurer of state who shall deposit it in the general fund of the state." §§ 252B.4, 252B.11. We find little to distinguish such reimbursement from the common definition of taxation, "a charge usually of money imposed by authority on persons or property for public purposes," Webster's New Ninth Collegiate Dictionary 1209 (9th ed. 1986) or the Black's Law Dictionary (5th ed. 1979) description of tax as "any contribution imposed by government upon individuals for the use and service of the state, whether under the name of toll, tribute, tallage, gabel, impost, duty, custom, excise, subsidy, aid, supply or other name." Id. at 1307. See also Internorth, Inc. v. Iowa St. Bd. of Tax Review, 333 N.W.2d 471, 476 (Iowa 1983) ("A tax is a charge levied to pay the cost of government.").
We are bound to apply the standard set by the United States Supreme Court in Bryan. The jurisdiction of the courts of this state extends only to "private civil causes of action involving Indians" and not to "general civil regulatory powers, including taxation." Bryan, 426 U.S. at 390-91, 96 S.Ct. at 2112, 48 L.Ed.2d at 722-23. Taxation is, in effect, a sub-category of state regulation. Thus, even though CSRU's actions may not fit neatly in the category of taxation proscribed by Bryan, its action clearly falls within the broader category of the state's "general civil regulatory power." Congress has not given Public Law 280 states, like Iowa, the jurisdiction to adjudicate controversies spawned by such regulation involving tribal Indians. Thus we affirm the district court's dismissal of the State's petition.
Inherent in our decision is the recognition that in areas of regulation and taxation our state laws must give way to the pre-emptive force of federal and tribal interests. California v. Cabazon Band of Mission Indians, 480 U.S. at ___, 107 S.Ct. at 1094, 94 L.Ed.2d at 262. In that connection, however, we observe that Congress has established a forum which may be appropriate for adjudication of controversies like the one before us. 42 U.S.C.A. section 660 (1983), captioned "Civil actions to enforce child support obligations; jurisdiction of district courts" provides:
The district courts of the United States shall have jurisdiction, without regard to any amount in controversy, to hear and determine any civil action certified by the Secretary of Health and Human Services under section 652(a)(8) of this title.[6] A civil action under this section may be brought in any judicial district in which the claim arose, the plaintiff resides, or the defendant resides.
Thus we conclude that despite Congress' apparent intention to strictly limit the jurisdiction of state courts in regard to Indian affairs, the State may not be without recourse in its effort to secure contribution from responsible adults for the support of dependent Indian children.
AFFIRMED.
*465 All Justices concur except SCHULTZ, HARRIS and LARSON, JJ., who dissent, and McGIVERIN, J., who takes no part.
SCHULTZ, J. (dissenting)
I dissent from the majority opinion. I would resolve this appeal by holding that the trial court has subject matter jurisdiction. The majority opinion and district court decided only whether there was any basis for jurisdiction under Public Law 280 (codified at 25 U.S.C. § 1322 (1982)). I believe that jurisdiction exists in this case without relying on the grant of authority under Public Law 280.
The modern view is that, even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law. Three Affiliated Tribes v. Wold Engineering, 467 U.S. 138, 147, 104 S.Ct. 2267, 2273-4, 81 L.Ed.2d 113, 121, (1984); White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 142-43, 100 S.Ct. 2578, 2582-83, 65 L.Ed.2d 665, 672 (1980); Williams v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254, (1959).
We first examine preemption. There is no federal law which would preempt exercise of jurisdiction by Iowa over this action. In fact, federal law obligates Iowa to go after persons obligated to support recipients of public aid. 42 U.S.C. 602(a)(26)(A) (Supp III 1985). The issue that remains then, is whether Iowa's assertions of jurisdiction would infringe on the tribal right to self-government.
The precise issue before the court was addressed by the New Mexico Supreme Court in State Ex rel. Dept. of Human Services v. Jojola, 99 N.M. 500, 660 P.2d 590 (1983), cert. denied 464 U.S. 803, 104 S.Ct. 49, 78 L.Ed.2d 69 (1983). In Jojola, the mother, father, and child were members of the same Indian tribe and lived on the same reservation. The mother began to receive public assistance and the State agency filed an action in state court to compel the father to pay support and reimburse the state for the public assistance already paid out. The New Mexico court concluded that the state district court had subject matter jurisdiction as the action involved a non-Indian, the State agency, and that the action arose outside of the reservation when the mother applied for public assistance and assigned her support rights to the state agency. Jojola, 660 P.2d at 593.
The instant case also involves a non-Indian, the state of Iowa, and a claim which arose off the reservation when the mother applied for and received welfare benefits and assigned her support claim to the state. State court jurisdiction of this matter would not infringe on the right of tribal self-government and should be allowed.
Even applying Public Law 280 I come to a different conclusion than the majority. I fail to see how the collection of assigned child support regulates tribal indians or amounts to a form of taxation.
I would reverse the trial court's holding that it did not have subject matter jurisdiction to hear this case.
HARRIS and LARSON, JJ., join this dissent.
NOTES
[1] Iowa Code § 252B.2 (1987).
[2] Id., § 252A.13
[3] Id., § 252B.5(4)
[4] Id., § 252B.5(5)
[5] Id., § 252B.6(2)
[6] "The secretary shall ... receive applications from States for permission to utilize the courts of the United States to enforce court orders for support against absent parents and, upon a finding that ... utilization of the federal courts is the only reasonable method of enforcing such order, approve such applications...." 42 U.S.C. 652(a)(8) (1983).