[No. E007144. Fourth Dist., Div. Two. Jan. 31, 1991.]

COUNTY OF INYO, Plaintiff and Respondent, v.
ELIZABETH JEFF, Defendant and Appellant.

**COUNSEL**

Lawrence R. Stidham, Dorothy Alther, Michael S. Pfeffer and Stephen V. Quesenberry for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DOUGHERTY, J.***—Elizabeth Jeff (Jeff) appeals from a judgment in the amount of $2,500 in favor of the County of Inyo and the County of Inyo on behalf of Ann Marie Jeff (her child), a minor.[1]

---

* Assigned by the Chairperson of the Judicial Council.

[1] It should be noted that this is not a case of a parental assignment of support rights to a governmental agency at the time of application for public assistance. In most cases the

## FACTS AND PROCEDURAL HISTORY

The plaintiff filed a complaint in the Inyo County Superior Court seeking reimbursement for child support for the minor Ann Marie Jeff. After service of the complaint, Jeff filed a motion to dismiss which alleged that the courts of California have no jurisdiction to order an Indian residing on a reservation to reimburse Inyo County (hereafter Inyo), a political subdivision of the state of California, for child support. The parties submitted the case to the trial court on declarations and the written argument of counsel. The trial court's record does not include a transcript of any oral testimony or argument. The trial court denied the motion to dismiss and entered judgment for Inyo. On Jeff's motion, the trial court reconsidered its decision, but later denied the motion.

The facts are not in dispute. Jeff is a member of the Bishop Paiute/Shoshone Tribe, a federally recognized Indian tribe. At the time Inyo filed its complaint, the minor resided with her maternal grandmother on the reservation and not with the mother, Jeff. The grandmother had sought public assistance from the Inyo (at its offices off the reservation) for her granddaughter. Inyo approved the application and paid benefits to the grandmother for Ann Marie from June of 1986 to April of 1988.[2] Under the mandate of state and federal law, Inyo sought to recover the moneys paid to the grandmother on behalf of the minor from Jeff.[3] Jeff does not dispute the amount of the judgment. Rather, she contends that the Inyo County Superior Court did not have subject matter jurisdiction over her.

## ISSUE ON APPEAL

■ Did the Inyo County Superior Court have jurisdiction to order a member of a federally recognized Indian tribe living on a reservation to

custodial parent will formally assign his or her rights against the so-called "out" parent to the state. Civil Code section 242 requires, among other things, that parents support their children. Civil Code section 248 provides that "[t]he obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support." Thus we have assignment by operation of law of the child's rights against her parent to the state.

[2] In *Acosta* v. *County of San Diego* (1954) 126 Cal.App.2d 455 [272 P.2d 92] the court held that counties must provide public assistance to reservation Indians. (*Id.*, at p. 467.) The court considered Public Law 280. (*Id.*, at p. 460.)

[3] Public assistance for the support of families with dependent children (AFDC) comes in part from the federal government with the requirement that each state seek reimbursement where legally possible. (42 U.S.C. § 602 et seq.) The sanction against a state for noncompliance is the reduction of federal funding. (42 U.S.C. § 603(h).) The statute also requires each state to create an enforcement program. (See 42 U.S.C. §§ 652(a)(4), 654(20)(A), 666.)

reimburse the county for public assistance paid to support the Indian's child in the custody of another?

## DISCUSSION

█ Since there was no statement of decision, we will presume that the court has made all the necessary findings to support the judgment. (See *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) In addition the parties have essentially agreed to all the facts. █ Therefore this court is faced solely with an issue of law, i.e., subject matter jurisdiction.

In analyzing the subject of jurisdiction over native American Indians, we must look first to the Constitution of the United States. Article I, section 8, clause 3 of the Constitution provides in part that Congress has the power to regulate commerce among the Indians. Because the Constitution does not mention state action against Indians and Indian tribes, we must look to federal statutes and federal court decisions which could limit state action. In 1953 Congress passed Public Law 280 which ceded to California and five other states some jurisdiction over Indians and Indian tribes. Later Congress acted to include the remaining states with Indian reservations under Public Law 280, but on condition that both the tribes and the states consent to this jurisdiction. Apparently, neither North Carolina nor New Mexico has enacted legislation including it under Public Law 280. Because of limited statutory authority, over the years the Supreme Court has decided a number of cases on general constitutional principles. There are no United States Supreme Court or California appellate decisions which have directly ruled on the specific issue before this court. We will examine both those cases decided under general constitutional principles and those applying Public Law 280.

Initially the United States Supreme Court opined that Indian tribes were "distinct political communities, having territorial boundaries, within which their authority is exclusive, . . ." (*Worcester* v. *Georgia* (1832) 31 U.S.(6 Pet.) 515, 557 [8 L.Ed. 483, 499].) In a more recent case the court drew on this reasoning of Chief Justice Marshall in stating that "[i]t followed from this concept of Indian reservations as separate, although dependent nations, that state law could have no role to play within the reservation boundaries." (*McClanahan* v. *Arizona Tax Comm'n* (1973) 411 U.S. 164, 168 [36 L.Ed.2d 129, 133, 93 S.Ct. 1257].) Although this language appears clear, the Supreme Court has acknowledged that it has modified the rigid position of *Worcester* v. *Georgia* by applying a new test, "whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." (*Williams* v. *Lee* (1959) 358 U.S. 217, 220 [3 L.Ed.2d 251,

254, 79 S.Ct. 269].) In *Williams*, a non-Indian operating a trading post on a reservation sued in state court to collect a debt from a reservation Indian. (*Id.*, at p. 217-218 [3 L.Ed.2d at pp. 252-253].) The court observed that the Navajo reservation had its own tribal court system which exercised broad civil jurisdiction over Indian defendants. (*Id.*, at p. 222 [3 L.Ed.2d at p. 255].) The court rejected state jurisdiction since such action would "undermine the authority of the tribal courts . . . ."[4] (*Id.*, at p. 223 [3 L.Ed.2d at p. 255].)

Next, we look to Public Law 280 to determine whether Congress has authorized the state action taken by Inyo.

Title 28 United States Code section 1360 reads in part as follows:

"(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country . . . to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

". . . . . . . . . . . . . . . . . .

"California . . . All Indian country within the state. . . .

"(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property . . . belonging to any Indian or any Indian Tribe . . . ."[5]

In *Bryan* v. *Itasca County* (1976) 426 U.S. 373 [48 L.Ed.2d 710, 96 S.Ct. 2102], the Supreme Court considered what effect Public Law 280 might

---

[4] Inyo contended that the Bishop Paiute/Shoshone Tribe had no tribal court and was prohibited by federal regulation from having one. (25 C.F.R. § 11.1 et seq.) Jeff asserted that the right to have such a court is independent of federal authority. Jeff stated in her argument to the trial court that the tribe had its own court. She referred the trial court to exhibit "A" attached to her motion to dismiss plaintiff's motion to strike her motion to dismiss plaintiff's motion to strike her motion to dismiss. Exhibit "A" is an ordinance of the tribe establishing a sales tax. We can find nothing in the record, including exhibit "A," to support Jeff's contention that there was ever a tribal court.

[5] There are two other statutes which are sometimes cited by authorities in this area. The first statute involves states which are not listed in 28 United States Code section 1360. (25 U.S.C. § 1322.) This section contains essentially the same language as section 1360 and provides for a method for other states to take jurisdiction over Indians. The other section (18 U.S.C. § 1162) provides that most criminal offenses occurring on reservations may be punished under state law. These three statutes are collectively identified as Public Law 280.

have on state action against reservation Indians. The court observed that Public Law 280 is " 'admittedly ambiguous.' " The *Bryan* court faced a challenge to a Minnesota law which sought to tax mobile homes on Indian reservations. (*Id.*, at p. 375 [48 L.Ed.2d at p. 713].) The court reviewed the statute's legislative history and reasoned that taxation was prohibited. (*Id.*, at p. 379 [48 L.Ed.2d at pp. 715-716].) The court also stated that the primary purpose of the relevant portion of Public Law 280 "was to grant jurisdiction over private civil litigation involving reservation Indians in state court." (*Id.*, at p. 385 [48 L.Ed.2d at p. 719].) In the more recent case of *California* v. *Cabazon Band of Mission Indians* (1987) 480 U.S. 202 [94 L.Ed.2d 244, 107 S.Ct. 1083] the court ruled on another portion of Public Law 280 which ceded to the states the power to enforce penal statutes on Indian reservations. The court ruled that state action which sought to prohibit bingo on reservations was regulatory (thus civil) and not criminal. (*Id.*, at p. 212 [94 L.Ed.2d at pp. 256-257].) Whether the result would have been the same if California had prohibited all forms of gambling is of course unknown. The court in its analysis stated that "it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under section 2, or civil in nature, and applicable *only as it may be relevant to private civil litigation in state court.*" (*Id.*, at p. 208 [94 L.Ed.2d at p. 254], italics added.)

There are four sister state courts which have directly ruled on the issue before us. In *State Dept. of Human Serv.* v. *Whitebreast* (Iowa 1987) 409 N.W.2d 460 the Iowa Supreme Court reviewed the relevant federal statutes and the case of *California* v. *Cabazon Band of Mission Indians, supra,* 480 U.S. 202. A divided Iowa court held that the action taken by the state was not private in nature and thus was prohibited under Public Law 280. The court looked to its own statutes which mandate collection of child support through direct enforcement and by a setoff of state income tax refunds and unemployment benefits. (*Whitebreast, supra,* 409 N.W.2d at p. 463.) The court held that this state action constituted more than private adjudication of child support. (*Ibid.*) The court went on to suggest that the state action bore a resemblance to prohibited taxation. (*Id.*, at p. 464.)

In a very recent case the court of appeals of Minnesota specifically rejected the reasoning in *Whitebreast* and held that "the county is only acting on behalf of a private party who has assigned her rights to . . . recover child support." (*Becker County Welfare Dept.* v. *Bellcourt* (Minn.Ct.App. 1990) 453 N.W.2d 543, 544.) The Minnesota court noted that there was no tribal court in which the county could enforce its rights. (*Ibid.*)

The supreme courts of both North Carolina and New Mexico have also held that state courts have subject matter jurisdiction to collect public

assistance from reservation Indians. These states are apparently not covered by Public Law 280. Their courts applied the reasoning of *Williams* v. *Lee*, *supra*, 358 U.S. 217. In *Jackson Cty. Child Supp. Enforce.* v. *Swayney* (1987) 319 N.C. 52 [352 S.E.2d 413], certiorari denied 484 U.S. 826 [98 L.Ed.2d 54, 108 S.Ct. 93], the Supreme Court of North Carolina considered a treaty which purportedly ceded some jurisdiction to the state.[6] (*Id.*, at p. 417.) However the North Carolina court also relied on the reasoning of the New Mexico Supreme Court in *New Mexico* ex rel. *Dept. of Human Serv.* v. *Jojola* (1983) 99 N.M. 500 [660 P.2d 590], certiorari denied 464 U.S. 803. [78 L.Ed.2d 69, 104 S.Ct. 49] (*Id.*, at pp. 417-418.) ▆ ▆▆▆▆ In *Jojola* the court found jurisdiction to seek reimbursement for child support.[7] (*Jojola, supra*, at p. 593.) The New Mexico court did not apply Public Law 280, but instead concluded that the *Williams* rule would allow state action. (*Id.*, at pp. 592-593.) New Mexico applied a three-prong test, (1) whether the parties are Indian or non-Indian, (2) whether the cause arose within an Indian reservation, and (3) what was the nature of the interest to be protected. (*Ibid.*) In *Jojola* the court found that the parties were Indian and non-Indian (the county was non-Indian), the cause arose outside of the reservation when the mother applied for public assistance, and lastly there was no interference with any tribal interest. (*Id.*, at p. 593.) The court was influenced by the congressional mandate requiring the states to seek reimbursement for public assistance. (*Ibid.*)

▆ While there is no direct California authority on this issue, our courts have considered state action in other areas involving reservation Indians. In *People* ex rel. *Dept. of Transportation* v. *Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509 [213 Cal.Rptr. 247, 698 P.2d 150] the California Supreme Court refused to enforce a state law which restricted outdoor advertising insofar as it applied to Indian reservation land. (*Id.*, at p. 522.) The court also considered the impact of a congressional command that required the states to enforce highway beautification rules, but found legislative history that appeared to exclude Indian reservations from state enforcement. (*Id.*, at p. 520.) More importantly to our case, the court held that Public Law 280 prohibited the enforcement of state regulations on reservation land. (*Id.*, at p. 521.) The court repeated the holding in *Barona Group of Capitan Grande Band, etc.* v. *Duffy* (9th Cir. 1982) 694 F.2d 1185, 1187-1188, that, " '[t]he Supreme Court . . . has construed [section 4] to

---

[6] We note that there are no ratified treaties on any subject between the United States and any California Indian tribes. (*Indians of California* v. *United States* (1942) 98 Ct.Cl. 583, 588-589, cert.den. 319 U.S. 764 [87 L.Ed. 1714, 63 S.Ct. 1324].)

[7] Jeff in her brief asserts outside the record that New Mexico officials are not enforcing the *Jojola* decision. She states, again outside the record, that the state of New Mexico has now agreed to collect child support from Indians only in tribal courts. We cannot consider facts outside the record and such a request is improper. (*Pulver* v. *Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491].)

mean that states have jurisdiction *only* over private civil litigation involving reservation Indians in state court. [Citation.] Thus a state may not impose general civil/regulatory laws on the reservation.'" (*Ibid*; italics in original.) The ruling in *Naegele* can be distinguished from the case at bench because it involved state regulation of reservation property.

In attempting to resolve this difficult issue, we agree with the *Naegele* court's observation that generalizations in this area are "treacherous." (*People* ex rel. *Dept. of Transportation* v. *Naegele Outdoor Advertising Co.*, *supra*, 38 Cal.3d at pp. 521-522.) Nevertheless we believe that the decision in *Becker County Welfare Dept.* v. *Bellcourt, supra*, 453 N.W.2d 543, which held that the state of Minnesota was enforcing a private right when it sought reimbursement for public assistance in state courts is better reasoned than those of the other states. While Public Law 280 is structured in terms of private parties, we believe that the test is one of substance rather than form. Here Inyo seeks only to collect child support from an individual Indian through assignment. We believe that the mere fact that the state is a party does not in and of itself disqualify Inyo. The action of Inyo can be considered as private in substance. Although California claimed that violations of its gambling laws were criminal, the court looked to the substance of the act and ruled them civil and regulatory in nature. (*California* v. *Cabazon Band of Mission Indians, supra*, 480 U.S. 202.) We believe that the reasoning in *State Dept. of Human Serv.* v. *Whitebreast, supra*, 409 N.W.2d 460 is faulty. Collection of child support is neither taxation nor regulatory. The mere fact that the state may have additional methods set out by law to collect the child support does not make the action regulatory. The *Whitebreast* court also suggested that the Iowa collection scheme was in the nature of taxation because the state assessed collection charges. We fail to see the difference between these charges and ordinary court costs for private parties. This inquiry might be best described as a distinction without a difference.

Jeff also criticizes state enforcement of child support on the theory that such action interferes with the "intimate matters of Indian family relationships . . . ." As authority for this proposition, Jeff cites the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.). While we recognize that Congress declared in part that it is the policy of the United States to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." (§ 1902), we also point out that the act regulates the adoption, foster placement, and termination of parental rights of Indian children (§ 1903). We can find nothing in the act which in any way limits the collection of child support payments by the states. Further we find no state or federal cases which support Jeff's argument, nor has Jeff submitted any that do. *Baker County Welfare Dept.* v.

*Bellcourt, supra,* 453 N.W.2d 543, 544, specifically held that the Indian Child Welfare Act of 1978 did not prohibit state collection of child support from reservation Indians. Since Congress has required the states to collect child support vigorously from their noncustodial parents, we believe that it is up to Congress to exempt Indian families if it believes that Indian parents should not be exposed to state collection. The record is bare as to how such collection may interfere with reservation Indian families, extended Indian families, tribal self-government and tribal courts. Without such a record, we dare not act.[8]

In conclusion we cannot say that appellant has shown that our ruling defeats the primary intention of Congress to prevent the states from unreasonably interfering with the rights of Indian self government. (*Williams* v. *Lee, supra,* 358 U.S. 217, 220 [3 L.Ed.2d 251, 253-254].) We are not unmindful of the mandate of *Alaska Pacific Fisheries* v. *United States* (1918) 248 U.S. 78, 89 [63 L.Ed. 138, 141, 39 S.Ct. 40] that "statutes passed for the benefit of dependent Indian Tribes . . . are to be liberally construed, doubtful expressions being resolved in favor of the Indians." Public Law 280 is not unclear on this point. (*Becker County Welfare Dept.* v. *Bellcourt, supra,* 453 N.W.2d 543.)

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McDaniel, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied April 18, 1991.

---

[8] Even if some interference could be shown, such interference might only violate the principles of *Williams* and not Public law 280. We observe that at least one court has ruled that the passage of Public Law 280 did not represent any intent of Congress to divest the states of jurisdiction over Indians and Indian tribes based upon the *Williams* test. (*Jackson Cty. Child Supp. Enforce.* v. *Swayney, supra,* 352 S.E.2d 413, 417, fn. 4.)

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.