**STATE of Iowa ex rel. Yvonne Marie VEGA, Appellee,**

v.

**Ronald MEDINA, Appellant.**

No. 95–491.

Supreme Court of Iowa.

May 22, 1996.

Dawn E. Mastalir of Legal Services Corporation of Iowa, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Diane Stahle, Deputy Attorney General, Robert R. Huibregtse, Assistant Attorney General, and John C. Baker, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

The State of Iowa, on behalf of Yvonne Marie Vega, brought suit against Ronald Medina seeking to establish paternity, current support, and reimbursement of AFDC benefits paid for Yvonne Vega, a minor child.

Medina appeals the district court's determination it had subject matter jurisdiction over the proceeding. We affirm.

## I. Factual and Procedural Background

Appellant Ronald Medina is a member of the Santee Sioux Indian tribe and currently resides on the Santee Sioux Reservation in Niobrara, Nebraska. During the fall of 1990, Medina engaged in a sexual relationship with Linda Vega, and in June of 1991, Vega gave birth to appellee Yvonne Vega. The Iowa Department of Human Services then filed suit on behalf of the child in order to establish paternity in Medina, establish current support, and obtain reimbursement of AFDC benefits previously paid by the state for support of the child.

Medina challenged the district court's subject matter jurisdiction on the basis he resided on the reservation and was merely visiting Sioux City during the time period in which the child was conceived. Linda Vega alleges Medina was a resident of Sioux City at the time and presented evidence Medina obtained an Iowa driver's license at that time listing a Sioux City address as his residence. She also alleges she visited Medina at that address several times. Medina argues he obtained an identification card only for the purpose of cashing checks and that it was not a driver's license.

Medina admitted to the relationship and the parties consented to DNA testing which provided a 99.4% likelihood Medina was the father. Medina later agreed to the entry of a consent decree establishing paternity but continued to challenge the district court's subject matter jurisdiction. In ruling on his motion to dismiss, the district court held Medina was a resident of Sioux City at the time of the child's conception and that the court therefore had jurisdiction over the matter.

## II. Subject Matter Jurisdiction

■ Questions of a court's subject matter jurisdiction are reviewed at law. Iowa R.App.P. 4; *S.S. v. Iowa Dist. Ct.*, 528 N.W.2d 130, 132 (Iowa 1995); *White v. Northwestern Bell Tel. Co.*, 514 N.W.2d 70, 74 (Iowa 1994). Because the defense of lack of subject matter jurisdiction may not be waived and subject matter jurisdiction may not be established by consent or estoppel, such a challenge may be raised at any time, even for the first time on appeal, and this court may also raise the issue sua sponte. *Milks v. Iowa Oto–Head & Neck Specialists, P.C.*, 519 N.W.2d 801, 803 (Iowa 1994).

In its ruling on Medina's motion to dismiss, the district court found subject matter jurisdiction on the basis of Medina's presence in Sioux City at the time of the child's conception. Medina challenges the finding of jurisdiction on the basis of this court's decision in *State ex rel. Department of Human Services v. Whitebreast*, 409 N.W.2d 460, 464 (Iowa 1987), in which we characterized the department's action as regulatory. In *Whitebreast*, both the mother and father, along with the child, were enrolled members of the Sac and Fox Tribe residing in Tama, Iowa. The mother received AFDC benefits for the child, and the Child Support Recovery Unit filed a petition seeking reimbursement for benefits previously paid and future support from Whitebreast, the father. Whitebreast then challenged the court's subject matter jurisdiction by raising the question whether 25 U.S.C. § 1322 (1983), commonly known as "Public Law 280," provided jurisdiction in such cases.

■ Public Law 280 provides in pertinent part

The consent of the United States is hereby given to any state not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume ... such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or

part thereof as they have elsewhere within that State.

25 U.S.C. § 1322.

The statute further states

Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property. . . .

Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

*Id.* § 1322(a)–(c).

Originally, only five states, California, Minnesota, Nebraska, Oregon, and Washington, were given jurisdiction under this statute, but others were given the option of assuming jurisdiction in this manner. Iowa is one of ten states which have chosen to do so and has adopted full Public Law 280 jurisdiction with the following language in Iowa Code section 1.12 (1985):

The state of Iowa hereby assumes jurisdiction over civil causes of action between Indians or other persons or to which Indians or other persons are parties arising within the Sac and Fox Indian settlement in Tama county. The civil laws of this state shall obtain on the settlement and shall be enforced in the same manner as elsewhere throughout the state.

In *Whitebreast,* this court held due to the regulatory nature of the proceedings of the Child Support Recovery Unit, jurisdiction was not present under Public Law 280. *Whitebreast,* 409 N.W.2d at 463–64. Medina's reliance on *Whitebreast,* however, is misplaced as Public Law 280 is not controlling in this case. Pursuant to Iowa Code section 1.12, the state has assumed jurisdiction over matters arising in the Sac and Fox settlement, the residence of all parties in *Whitebreast.* None of the parties in the instant case are residents of the Sac and Fox settlement, therefore Iowa Code section 1.12 is not implicated. Furthermore, Public Law 280 confers jurisdiction to a state over civil causes of action which arise in areas of Indi-

an country. In *Whitebreast,* the cause of action arose in Indian country, *i.e.,* on the reservation. In the instant case, the cause of action arose in Sioux City, *i.e.,* off the reservation. Therefore, Public Law 280 is not implicated in the instant case.

■ In the absence of express federal law stating otherwise, Indians venturing beyond the boundaries of their reservations are generally subject to the nondiscriminatory state laws applicable to all citizens of the state. *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114, 119 (1973). In *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251, 253–54 (1959), the Supreme Court set out the standards for determining if a state court has jurisdiction over an action involving Indian matters. In *Williams,* the court explained

Essentially, absent governing Acts of Congress, the question has always been whether the state actions infringed on the right of reservation Indians to make their own laws and be ruled by them.

*Williams,* 358 U.S. at 220, 79 S.Ct. at 271, 3 L.Ed.2d at 254.

This test has been applied most often to determine jurisdiction in cases involving an Indian party and a non-Indian party because in these cases both the state and the tribe may reasonably claim to have an interest in the outcome. The *Williams* test resolves this conflict by establishing a boundary point beyond which state courts could not exercise jurisdiction—the point at which tribal self-government is affected. *See Fort Mojave Tribe v. San Bernardino County,* 543 F.2d 1253, 1255–56 (9th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977).

In the instant case, the first part of the test, whether there is any governing Act of Congress establishing jurisdiction, does not provide an answer as there is no federal statute applicable to this case. For this reason, we must proceed to determine whether pursuit of the action in the state court infringes on the rights of reservation Indians to make their own laws and be ruled by them. *See White v. Califano,* 437 F.Supp. 543, 548 (D.S.D.1977), *aff'd,* 581 F.2d 697 (8th Cir.1978).

In *Chino v. Chino,* 90 N.M. 203, 206, 561 P.2d 476, 479 (1977), the New Mexico court provided useful criteria to determine whether state court jurisdiction in a particular matter would infringe on Indian government:

1) whether the parties involved are Indians or non-Indians;
2) whether the cause of action arose within the Indian reservation; and
3) the nature of the interest to be protected.

*See also State ex rel. Dep't of Human Servs. v. Jojola,* 99 N.M. 500, 502–03, 660 P.2d 590, 592–93, *cert. denied,* 464 U.S. 803, 104 S.Ct. 49, 78 L.Ed.2d 69 (1983).

In the instant case, two of the parties, the Iowa Department of Human Services and the child, as well as the child's mother, are non-Indians residing outside the Indian reservation. The cause of action, regardless of how it is examined, arose off the reservation. The child was conceived outside the reservation, establishing the paternity action arose off the reservation. Medina's argument that his later return to the reservation defeats jurisdiction is without merit. The child's mother filed for AFDC benefits for the child off-reservation. Therefore, the cause of action relating to the state seeking reimbursement also arose off-reservation.

The final criteria, the balancing of the interests implicated also militates in favor of a finding of state court jurisdiction. Iowa undoubtedly has a strong interest in protecting its state assistance programs as well as ensuring the well-being of its citizens. The state's interest in adjudicating paternity and support determinations in the state courts is also strengthened by the need for uniformity in these determinations. Additionally, there is no conflict with Santee Sioux self-government because there is no tribal court to handle the matter. *See Becker County Welfare Dep't v. Bellcourt,* 453 N.W.2d 543, 544 (Minn.Ct.App.1990) (tribe could not adjudicate action because it had not authorized the creation of tribal courts to deal with domestic relations matters); *State ex rel. R.G. v. W.M.B.,* 159 Wis.2d 662, 465 N.W.2d 221, 224 (Ct.App.1990) (state jurisdiction was valid where evidence was insufficient to show

tribe's exercise of its sovereign governmental authority). Furthermore, we do not condone Medina's use of his Indian status as a shield from the ramifications of his off-reservation activities. *See Lonewolf v. Lonewolf,* 99 N.M. 300, 302, 657 P.2d 627, 629 (1982).

### III. Conclusion

Because the state's interest and connections to this case are so great, and its exercise of jurisdiction would not interfere with any rights or interests of the reservation, subject matter jurisdiction in the Iowa district court is appropriate in this matter. Accordingly, we affirm the district court's denial of Medina's motion to dismiss.

**AFFIRMED.**