In the Matter of the Arbitration between NEW YORK TIMES COMPANY, Respondent, and NEWSPAPER GUILD OF NEW YORK, LOCAL 3, C.I.O. et al., Appellants.

First Department, June 26, 1956.

*Herman E. Cooper* of counsel (*H. Howard Ostrin* and *Arthur Kamell* with him on the brief; *Cooper, Ostrin & De Varco,* attorneys), for appellants.

*John W. Castles* of counsel (*Louis M. Loeb* and *John W. Castles,* 3d, with him on the brief; *Lord, Day & Lord,* attorneys), for respondent.

VALENTE, J. The guild appeals from a determination of Special Term which granted the application of the *New York Times,* a daily newspaper, for a stay of arbitration and denied the guild's cross motion to compel arbitration under a collective bargaining agreement between the parties.

On July 13, 1955 one Melvin Barnet, a copy reader and member of the guild, was notified that he had been discharged. It appears that on August 10, 1955 the *Times* unit grievance committee of the guild met with representatives of the *Times* and the reasons for Barnet's discharge were explained in detail. On September 13, 1955 the grievance committee by resolution voted against recommending that the guild arbitrate the dismissal and, on September 22, so reported to the members of the *Times* unit. Subsequently the members of the guild in the

employ of the *Times* voted 337 to 235 to support this resolution. However, on October 13 the executive board of the guild rejected the recommendation and voted to submit Barnet's discharge to arbitration. On October 21 the publisher refused to accede to the guild's demand for arbitration and thereafter, by order to show cause returnable November 7, 1955, the *Times* moved to stay the guild's arbitration demand. On November 15 the guild cross-moved to compel arbitration.

The question posed is whether Barnet's discharge presents an arbitrable issue within the scope of agreement of the parties to arbitrate any matter that they have been unable to settle. The petitioner urges that there is no arbitrable issue since the guild was obligated by its agreement to act for itself and on behalf of all the employees of the *Times;* and that in this instance, in demanding arbitration, they were acting only for themselves, since the *Times* unit had recommended against arbitration.

Special Term granted a stay upon the theory that the guild in demanding arbitration could only do so as the agent for the *Times* unit and since the members of the *Times* unit had voted in the referendum against recommending arbitration, the guild as agent was bound by the expressed wishes of its principal, the *Times* unit. In other words, the action of the *Times* unit at the afore-mentioned meeting was final and conclusive on its agent, the guild.

We do not agree with this theory because it misconstrues the intent of the parties to the agreement and makes an inapposite application of the law of agency to internal union affairs. While it is true that the guild entered into the agreement " for itself and on behalf of all employees of The Times ", the manifest intent of the parties was that the decision to arbitrate or not to arbitrate remained exclusively with the guild, as distinguished from any single employee or group of employees covered thereunder. There is nothing in the agreement, expressed or implied, to indicate that the right to arbitrate was to be subject to the authorization, ratification or rejection of the *Times* unit. There is ample to conclude that at most the decision of the *Times* unit represented its recommendation in the matter and not its mandate. Indeed, the grievance committee voted on September 13, 1955 not to *recommend* to the guild that it arbitrate the propriety of the dismissal. In its letter to the membership, dated September 22, 1955, calling for the referendum, it stated that the grievance committee did not " recommend " arbitration for stated reasons.

Even accepting the *Times'* construction of the contract — to regard the resolution and the vote as a mandate and not a recommendation is to apply the common-law rules of agency to the internal affairs of a union. It is recognized that in a collective bargaining agreement of this nature the conventional rules of principal and agent do not come into play.

At common law, as well as under statutory law, labor organizations have always been considered unincorporated associations. (*Martin* v. *Curran,* 303 N. Y. 276.) Such groups, unlike corporations, have no existence independent of their membership. (*Ostrom* v. *Greene,* 161 N. Y. 353.) Therefore, it has been held that a union is not liable for the acts of its members, in their official capacity, in the absence of ratification or approval by the entire membership.

Once an agent has been designated for collective bargaining purposes, the membership it represents cannot assume to reject certain acts of its bargaining representatives and accept others. To hold otherwise would make a shambles of all labor negotiations and would be a refutation of long experience in that field.

To illustrate, suppose in this very case the guild executive committee had voted not to submit this matter to arbitration and the *Times* unit at the referendum meeting had voted that it should be submitted to arbitration. Could it be argued that the *New York Times,* which had agreed to handle such matters exclusively with the guild as the opposite party to its agreement, would be bound by such an overruling of the guild's decision? To countenance such byplay between the unit membership and the guild would make for unstable relations and would possibly make the newspaper the victim of the internal tensions and struggles of the union.

There are statutory provisions for the revocation of the right of any union to represent employees in any given enterprise and a union, or an employer for that matter, may have recourse to statutory relief at any time that the union is regarded by the majority of the employees as an unsatisfactory representative. None of the statutory safeguards was invoked in this case.

We find there are arbitrable issues to be decided. Having held that such issues exist, our function at this point terminates. These issues and any others arising therefrom must be decided by the arbitrator. (*Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710.) These are issues that relate to the contract and the language providing for arbitration is sufficiently broad to indicate the intention of the parties to give

exclusive jurisdiction of them to the arbitrator. (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76.)

The order should be reversed, petitioner-respondent's motion to stay arbitration should be denied and respondents-appellants' cross motion to compel arbitration should be granted.

BOTEIN, J. P., RABIN, COX and FRANK, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellants, petitioner-respondent's motion to stay arbitration denied, and respondents-appellants' cross motion to compel arbitration granted. Settle order on notice.