### HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.* PETER J. SENA

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 38111
ANSONIA-MILFORD

Memorandum filed October 2, 1992

*Bai, Pollock & Dunnigan,* for the plaintiff.
*Victor M. Ferrante,* for the defendant.

FLYNN, J. The parties' cross applications both to confirm and to vacate an arbitration award raise a question of first impression in this state: Whether a labor union member and business agent provided with a car leased by the union is covered by underinsured motorist coverage issued to the union in its union local name.

Because the court finds that the named insured was a voluntary association that had no separate legal existence distinct from that of its members, like the defendant, who comprised it, the court rules that the plaintiff, Hartford Accident and Indemnity Company, insured the individual members according to its policy of insurance issued to Local 371-United Food & Commercial Workers Union (union local). The arbitrator's award of uninsured motorist benefits to the defendant, Peter Sena, therefore, is confirmed.

The court first considers the scope of its review. The court finds that the parties participated in compulsory arbitration pursuant to General Statutes § 38a-336 (formerly General Statutes § 38-175c), thereby requiring the trial court to conduct a de novo review of the application of law in the arbitration award. The policy provided that a decision agreed to by two of the arbitrators would be binding. Section 38a-336 provides that: "Each automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." Where judicial review of a compulsory arbitration award is undertaken the court must conduct a de novo review of the interpretation and application of the law by the arbitrators. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987); see also *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 375, 593 A.2d 498 (1991); *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 655 n.11, 591 A.2d 101

(1991). De novo review of the interpretation and application of the law by the arbitrators will therefore be the scope of this court's review.

The pertinent facts are as follows. On March 26, 1989, the defendant, who is a member of and employed by union local, was injured in a motor vehicle accident. The accident occurred as a result of a collision between a motorcycle owned and operated by the defendant and an automobile owned and operated by Luis D. Davila. As a result of the accident, the defendant suffered bodily injuries and lost time from his employment.

Following the accident, the defendant collected $20,000 from Davila. This amount represented the liability limit available under Davila's insurance policy. At the time of the accident, the defendant's motorcycle was insured by the Jefferson Insurance Company. This policy had a maximum limit of $20,000 and the defendant was paid $10,000 under the Jefferson policy. In addition, the defendant's family automobile was insured under a policy issued by Nationwide Mutual Insurance Company. The Nationwide policy had a limit of $50,000 and the defendant collected $28,000 under that policy.

The union local had provided the defendant with a vehicle that was insured by the plaintiff, and which had uninsured/underinsured motorist coverage in the amount of one million dollars. Following the accident, the defendant sought to recover underinsured motorist benefits from the plaintiff pursuant to this policy. On September 6, 1991, the defendant's claim for underinsured motorist benefits was submitted to compulsory arbitration. A three member arbitration panel conducted hearings on September 6 and September 16, 1991. On November 20, 1991, the panel declared the hearings closed and submitted its findings of fact and award.

The panel unanimously found that the defendant had sustained damages in the amount of $100,000, and that the plaintiff was entitled to credits in the amount of $60,000. The credits represented the amounts the defendant had collected from the Davila policy, the policy covering his motorcycle and the policy issued on his family automobile.

The panel was split, however, on the issue of whether the defendant was entitled to underinsured motorist coverage from the plaintiff. Two panel members found that the defendant was entitled to such coverage and ordered the plaintiff to pay $40,000. The remaining panel member found that the defendant was not entitled to coverage under the policy.

On December 16, 1991, the plaintiff filed an application to vacate, modify and/or correct the arbitration award pursuant to General Statutes §§ 52-418 and 52-419. On January 17, 1992, the defendant filed an application for an order confirming the award of arbitration in accordance with General Statutes § 52-417. Thereafter, because of delays occasioned by the lack of library facilities at the Superior Court in Milford and the complexity of the issue to be decided, the parties kindly extended the time for rendering a decision on the matter.

The plaintiff's application to vacate contains three counts. Count one asserts that the defendant does not qualify as an insured under the policy issued by the plaintiff, and that the panel majority erroneously found that the defendant was entitled to underinsured motorist benefits. Count two maintains that the defendant had claimed medical bills in the amount of $13,375.75, and that $10,700.60 of that amount was paid by health insurance. Accordingly, the plaintiff alleges in count two that the arbitration panel erroneously failed to reduce the award by $10,700.60. Finally, in count three,

the plaintiff contends that the panel erroneously failed to reduce the award by the full amount of underinsured motorist benefits that were available to the defendant under the policies issued by Jefferson and Nationwide.

In his application to confirm the award, the defendant counters that the arbitration award should be confirmed because the defendant is a member of the noncorporate entity. As a result, the defendant contends that he is insured for purposes of the underinsured motorist coverage under the plaintiff's policy, which insures the automobile provided to the defendant for his exclusive business and personal use. The defendant further maintains that the plaintiff is not entitled to any credit for medical bills that were paid by the defendant's private insurance carrier.

The court will first turn to the plaintiff's contention that the defendant is not entitled to underinsured motorist benefits under the subject policy because the named insured is the union local, and the defendant does not otherwise qualify as an insured pursuant to the terms of the policy. The plaintiff further contends that the defendant cannot qualify as an insured simply because he is a member of the union local since the union local has a legal identity separate and distinct from that of its membership.

The defendant counters that he is an employee/member of the named insured who has been given an insured vehicle for his exclusive business and personal use. He maintains that a union is an aggregate of individuals within the named insured, or extensions thereof.

The named insured of the subject policy is the union local. The policy contains Uninsured Motorist Cover-

age Endorsement CA 21 17 (B) that describes additional insureds as follows: "B. WHO IS AN INSURED

"1. You.

"2. If you are an individual, any 'family member.'

"3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.

"4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.' "

The plaintiff contends that the defendant not only fails to qualify as the named insured, but that he also fails to qualify as an insured under any of the aforementioned designations. The plaintiff maintains that the defendant is not the designated "You" in paragraph one because "You" refers to the named insured, and the plaintiff further contends that paragraph two is inapplicable because it refers to family members of the named insured, *if* the named insured is an individual. The plaintiff argues that paragraph three does not apply because the defendant was not occupying a covered auto at the time of the accident, and that the defendant does not qualify under paragraph four because he is not seeking to recover for bodily injuries sustained by another insured.

Whether the defendant is a person insured by the policy depends on the nature of the union local, and whether it has separate and independent legal existence distinct from its members.

"Primarily, the right of possession of the property of a voluntary association is in the association, that is, in its members or their officers and agents." *Grand Lodge* v. *Reba,* 97 Conn. 235, 238, 116 A.2d 235 (1922); *Bridgeport Brass Workers Union* v. *Smith,* 15 Conn. Sup. 505, 515 (1948).

Corporations depend for their separate legal existence on a franchise from the state. Persons who associate together for some common nonbusiness purpose without a corporate franchise from the state are merely an aggregation of individuals, not a separate legal entity. As epigrammatically expressed by Judge Zephaniah Swift: "Individuals can by no association, agreement, or combination, constitute a corporation." 1 Z. Swift, A System of the Laws of the State of Connecticut (1795), p. 225.

The plaintiff cites certain provisions of General Statutes, §§ 52-76, 31-114, and 52-365 that, respectively, (1) permit the association to be party to lawsuits in the association's name and to be sued by its members and to be made a defendant in civil suits brought against it and its members, (2) limit liability of union members for unlawful acts during a strike to those they authorize, participate in, or ratify, and (3) allow lodging of executions on judgments directly against the association. The plaintiff argues that in effect these laws confer a separate entity status on the union local. The plaintiff's argument emphasizes the blurring of the traditionally distinctive qualities and hallmarks distinguishing the corporation from the voluntary association.

"A corporation is a legal entity or person created by special authority from the state or the sovereign. Though it consists of a number of individuals, it has a legal existence apart from any of them. Hence, it may sue or be sued in its corporate name. It may sue its own members and be sued by them. It may own property and incur liabilities with respect to it. . . . The death or retirement of a stockholder . . . does not in any way affect the identity of the corporation." E. Gilmore, Handbook on the Law of Partnerships (1911) p. 41.

At common law, members of a partnership could not sue the partnership on the theory that they were in effect suing themselves. Statutory enactments in many states have abrogated that common law rule as to partnerships. The same theory, however, was sometimes used as an impediment to suits by a member of a voluntary association against the association itself. Because of the injustice that rule presented in certain factual situations, in some jurisdictions that did not have an express statute permitting such suits such as General Statutes § 52-76, the courts permitted suit on the legal theory that the association was a legal entity. See *Scanlon* v. *Duffield*, 103 F.2d 572 (6th Cir. 1939). It perhaps would have been better premised on a legal theory that the injured member should be permitted to sue his other fellow members, but in any event the "entity" theory does not seem either logical, useful or necessary given the facts in the present case and the authority granted in § 52-76. A voluntary association for tort liability purposes remains an aggregation of individuals who may be held personally liable in tort for certain of its activities and who are entitled to contract to insure against their liability for such suit.

In *New York Times Co.* v. *Newspaper Guild of New York,* 2 App. Div. 31, 33, 152 N.Y.S.2d 884 (1956), the court, in considering the identity of a union, observed that "[a]t common law, as well as under statutory law, labor organizations have always been considered unincorporated associations." The court further noted that "[s]uch groups, unlike corporations, have no existence independent of their membership." Id.

In construing the insurance contract to determine if the defendant is an insured under the policy, the court's focus must not be on the blurring that has occurred over the years by enactment of laws that grant some powers to voluntary associations that formerly resided only in corporations. Rather, the court must focus on (1) the

clear legal nature of the union local as a named insured and (2) if the union local has no separate existence from the individuals who make it up, the individual liability of those persons who make it up, which the policy insures against.

Entitled "Actions by and against voluntary associations," General Statutes § 52-76 permits (1) such an association to sue and be sued in the association name, (2) a member to sue the association, and the association to sue a member, and (3) civil actions to be brought both in contract and in tort against an association and its members. It is therefore clear from the words of this statute that a civil action may be brought against members of an unincorporated voluntary association in addition to the association itself.

It is also clear from case law that not only are members of an unincorporated association able to be sued, they are also liable individually. *Davison* v. *Holden,* 55 Conn. 103, 10 A. 515 (1887); see also annot., 92 A.L.R.2d 499. Although the decided cases deal with contract rather than tort claims, it is clear that individual liability remained after passage of the predecessors to the present version of § 52-76. See *Azzolino* v. *Sons of Italy,* 119 Conn. 681, 691, 179 A.2d 201 (1935).[1] Passage of this statute permitting an unincorporated voluntary association to sue or be sued in its own name, which also still permitted civil actions to be brought against its members, did not convert associations into separate quasi-corporate entities distinct from their members.

[1] The principal/agent theories underpinning contractual liability of voluntary association members are equally applicable to tort claims made under General Statutes § 52-76. Vicarious liability of owners and lessees of automobiles rests "on the broad ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his affairs and within the scope of their authority." *O'Keefe* v. *Fitzgerald,* 106 Conn. 294, 298, 137 A. 858 (1927), citing *Stickney* v. *Epstein,* 100 Conn. 170, 178, 123 A. 1 (1923) (common law family car doctrine).

The court will next address the defendant's contention that General Statutes § 31-114 makes the union local equivalent to a corporation.

Section 31-114 limits the legal responsibility of members of an association or organization participating in a labor dispute for unlawful acts by providing that they may not be held liable for any such acts unless they participated in them or authorized them, or after actual knowledge of them, ratified the unlawful act. Section 31-114 limits individual liability of union members in labor disputes only. Lack of any limitation provision for general negligence liability in that statute, however, leaves the liability of individual members intact for damages caused by negligent operation of motor vehicles they own or lease in common under their union local name if operated under a grant of authority where the driver is their agent. Section 31-114 does not make a union local any less an aggregation of individuals. "[W]hile unions are regulated by the state and receive certain protections, they are unincorporated associations and do not depend on a franchise from the state for their existence." *Wirtz* v. *National Maritime Union of America,* 399 F.2d 544, 548 (2d Cir. 1968). Thus the court rules in *Wirtz* that quo warranto, a remedy against usurpation of a public office or privilege granted by the state, did not apply, because a union office is neither a public office nor one granted by the privilege of corporate franchise by the state.

Diversity of citizenship can sometimes be grounds for access to the federal courts. Where that was the basis for federal jurisdiction, the federal court in *Ketcher* v. *Sheet Metal Workers' International Assn.,* 115 F. Sup. 802 (E.D. Ark. 1953), ruled that in an action brought by or against a labor union that was an unincorporated association, no required jurisdictional diversity exists where one or more of the members of such an association is a citizen of the same state as one or more of its adversaries.

The analysis this court has made regarding § 31-114 and § 52-76 applies equally to § 52-365, which permits execution on judgments directly against the association.

Under the Connecticut statutory scheme the members of a voluntary association such as the defendant's union are not exempted from individual liability as is the case under the laws of some other states. Case law from other states reflects differences from Connecticut's statutory scheme. See *Ehrlich* v. *Willenski,* 138 F. 425 (E.D. Pa. 1905); *96 Fifth Avenue Realty Corporation* v. *Greenberg,* 180 Misc. 614, 44 N.Y.S.2d 231 (1943), aff'd, 181 Misc. 142, 47 N.Y.S.2d 222 (1944). In fact, § 52-76 specifically authorizes "[c]ivil actions [to] be brought [in tort] against such an association and its members . . . ."

A policy of automobile insurance issued to a voluntary association therefore covers and indemnifies the individual members who collectively are the aggregation of persons who make it up. They are entitled as much to its policy coverage for injuries and damages from uninsured or underinsured motorists as they are for indemnity for their individual liability for negligence as a result of a collision involving a vehicle owned or leased in their union local's name. In such a situation the word "You" in the Uninsured Motorist Coverage Endorsement means each and every member of the aggregation of individuals that is the union local, the named insured.

Generally, an employee of a corporation is not covered under an employer's uninsured motorist provision unless the employee is specifically designated as an insured. See, e.g., *Testone* v. *Allstate Ins. Co.,* 165 Conn. 126, 328 A.2d 686 (1973); *Ceci* v. *National Indemnity Co.,* 26 Conn. App. 661, 603 A.2d 412 (1992). These cases involving employees of corporations are inapposite to the present case in which the named insured is

not a corporation but an unincorporated aggregation and the defendant is a member of it. He is no less a member simply because by virtue of his appointment or election he is also an employee.

The court finds that the defendant, as a member of a voluntary association who, with other members of this aggregation of persons would be individually liable for any negligent acts carried on by using any motor vehicles leased in that association's name, is just as much an insured person under the provisions of the underinsured motorist provisions of a policy insuring the vehicle as he would be for tort liability claims that might be made against him for its operation.

Uninsured Motorist Coverage Endorsement CA 21 17 (D) (a) of the policy issued by the plaintiff provides in relevant part that amounts payable under the uninsured motorist coverage shall be reduced by: "All sums paid or payable under any workers' compensation, disability benefits or similar law . . . ."

The language of this provision is almost identical to the language found in § 38-175a-6 (d) (2) of the Regulations of Connecticut State Agencies, which expressly authorizes the manner in which an insurer may contractually reduce its liability for uninsured or underinsured motorist coverage. See *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 377.

The parties stipulate that 80 percent of the defendant's medical expenses were paid by insurance, and Brian Petronella, the secretary-treasurer of the union, testified that the medical benefits were provided by the Local 371 Amalgamated Trust Fund. In addition, the defendant received his full salary while he was absent from work due to his injuries, and Petronella testified that the defendant did *not* receive any disability insurance benefits. Thus, the defendant did not receive any "sums paid or payable under any workers'

compensation disability benefits or similar law.'' The plaintiff has failed to show that the payments were received by the defendant as a result of some requirement of law much less a law similar to the workers' compensation statute. For all of these reasons, the court rules that the amounts that the defendant received from the union trust fund do not fall within the policy's reduction clause.

The plaintiff raised the issue in the initial complaint whether the arbitration panel erroneously failed to reduce the award by the full amount of underinsured motorist benefits that were available to the defendant under the Jefferson and Nationwide policies. Generally, if an issue is not briefed it is deemed to have been abandoned. *State* v. *Ramsundar,* 204 Conn. 4, 16, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987); *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 355 A.2d 91 (1974).

For all of these reasons, the plaintiff's application to vacate, modify and correct the arbitration award is denied and the defendant's cross application to confirm is granted.