[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANTS' MOTION TO DISMISS (NO. 113)
I. Factual and Procedural History
On August 30, 1997, Peter V. Cuprak (hereinafter the "plaintiff") brought this action against Sun International Hotels Limited, Sun Cove Ltd., and Trading Cove Associates (hereinafter the "defendants") alleging damages for wrongful discharge, intentional infliction of emotional distress, breach of the covenant of good faith and fair dealing, fraud and deceit, and false light defamation. The plaintiff alleges in CT Page 10294 his complaint that on September 12, 1996, he commenced employment with the defendants as "Grave Yard Shift Manager" and that on November 21, 1996, he was summarily terminated by the defendants with no explanation.[1] The complaint alleges that the defendants "run, supervise, and maintain, (sic) a casino for the Mohegan Sun Gaming Authority."[2]
On June 9, 1997, the defendants filed a motion to dismiss the plaintiff's complaint on the ground that the court lacked subject matter jurisdiction to hear the plaintiff's claims. On June 20, 1997, the plaintiff filed his objection to the defendants' motion to dismiss. On June 23, 1997, the court (Handy, J.) heard oral argument on the motion.
II. Motion to Dismiss, Generally
"A motion to dismiss . . . properly attacks the jurisdiction of the court . . . ." Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). "The motion to dismiss shall also be used to assert . . . lack of jurisdiction over the subject matter . . . ." (Internal quotation marks omitted.)Sadloski v. Town of Manchester, 235 Conn. 637, 645 n. 13,668 A.2d 1314 (1995). "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts."Carl J. Herzog Foundation, Inc. v. Univ. of Bridgeport,41 Conn. App. 790, 793, 677 A.2d 1378 (1996). However, "[a] ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . [Rather,] [m]otions to dismiss are granted solely on jurisdictional ground[s]." (Citations omitted.) Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303,306-07, 635 A.2d 843 (1993).
III. Discussion
A. Parties' Arguments
In support of their motion to dismiss, the defendants assert the following arguments: (1) this court lacks subject matter jurisdiction over this matter because the defendants are agents or instrumentalities of the Mohegan Tribe of Indians of Connecticut and thus enjoy sovereign immunity; (2) this court lacks subject matter jurisdiction over this matter on the ground that the conduct alleged by the plaintiff occurred on CT Page 10295 Mohegan tribal lands and thus the exercise of jurisdiction by a Connecticut court would impermissibly infringe on the right of the Mohegan Tribe to govern themselves; (3) this court lacks subject matter jurisdiction on the ground that the conduct alleged arises from the plaintiff's employment by the Mohegan Tribal Gaming Authority;[3] and (4) this court lacks subject matter jurisdiction over this matter because the plaintiff failed to exhaust his tribal remedies. In opposition to the defendants' motion, the plaintiff asserts that the defendants' are not members of the Mohegan Tribe of Indians nor are they instrumentalities of the same and, therefore, they do not enjoy sovereign immunity.[4]
B. Disposition
While "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers," Santa Clara Pueblo v. Martinez,436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978), tribal sovereign immunity attaches to the tribe and not to the tribes' individual members. State v. Sebastian, 243 115, 161, (1997). The defendants are nonmember, Connecticut corporations and, as such, may not avail themselves of the Mohegan tribe's sovereign immunity.
The defendants' other arguments raise fundamental issues of state jurisdiction over Indian affairs, the scope of tribal court jurisdiction, and federal law(s) regarding the state's treatment of Indian tribes. To resolve this jurisdictional tangle the court must determine three questions: (1) Whether the Mohegan Gaming Dispute Court has jurisdiction to hear this case; (2) whether the exercise of state jurisdiction over this matter would infringe on the Mohegan tribe's inherent sovereignty; and (3) whether this court should apply the federal doctrine of exhaustion of tribal remedies in this case.
1. Tribal Court Jurisdiction
The Mohegan Tribe of Connecticut has been formally recognized by the federal government and the state of Connecticut.[5] To facilitate the operation of its gaming enterprises, the Tribe has created the Mohegan Tribal Gaming Commission (hereinafter the "MTGA"). The Tribe has also created a Gaming Dispute Court to resolve disputes involving the MTGA and its related activities. The Mohegan Constitution CT Page 10296 permits the gaming dispute court "[e]xclusive jurisdiction for the Tribe over disputes arising out of or in connection with Gaming, the actions of the [MTGA], or contracts entered into by The Mohegan Tribe or the [MTGA] in connection with Gaming, including without limitation, disputes arising between any person or entity and the MTGA, including customers, employees, or any gaming manager operating under a gaming management agreement . . . shall be vested in the Gaming Dispute Court." Mohegan Const. art XIII, § 2.
However, a tribal court's assertion of its own jurisdiction is limited by federal law. In Strate v. A-1Contractors, U.S. (65 U.S.L.W. 4298, January, 7 1997), the Court stated that "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." Id. 4300. Those circumstances include: (1) when the action arises on tribal lands; (2) when a party enters into a consensual relationship with a tribe; or (3) when the conduct threatens or has some direct effect on the "political integrity, the economic security, or the health or welfare of the tribe." Id. 4300, citing Montana v. United States, 450 U.S. 544, 565-66,101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).
As indicated above, the parties to this proceeding are nonmembers of the Mohegan tribe. Thus, absent statute or treaty authorizing jurisdiction in this case, or a compelling nexus between the Tribe and the underlying action, the tribal court does not have jurisdiction to hear this matter.
The parties fail to direct this court's attention to either statute or treaty providing for explicit jurisdiction in this case.[6] However, the defendants argue that the underlying transaction arises on the reservation, thus mandating tribal court jurisdiction. Clearly, the situs of the underlying action is key in determining whether or not a tribal court will have civil jurisdiction over nonmembers. However, in this case, the situs of the underlying action is in dispute. While acknowledging that the underlying action occurred, in part, on Indian tribal land, the plaintiff's complaint contemplates a course of dealing with defendants that includes actions outside the reservation and occurring in the state of Connecticut.
In the alternative, the defendants argue that the underlying action amounts to a "reservation affair" over which CT Page 10297 the tribal court is entitled to preside. The Montana decision holds that a tribal court may retain jurisdiction over those actions that affect the tribe's economic or political well-being.Strate v. A-1 Contractors, supra, 65 U.S.L.W. 4300, citing Montana v. United States, supra, 450 U.S. 565-66. However, this case addresses an employment dispute between three casino vendors and one of their employees.[7] The Tribe is not even a party to this action, and none of the Tribe's assets are at stake. Thus, the defendants cannot claim that the second Montana exception applies in this case.
The inherent sovereign power of an Indian tribe is at its weakest when seeking to adjudicate disputes between nonmembers of the tribe concerning transactions or occurrences that do not threaten a tribe's political or economic well-being. This court concludes that tribal court jurisdiction over this matter is not presumed.
2. State Court Jurisdiction
Whether this court has the authority to hear a dispute on matters effecting tribal affairs is determined by the rule set forward by the United States Supreme Court in Williams v. Lee,358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).[8]
"Essentially, absent governing acts of Congress, the question has always been whether the state actions infringe on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, supra, 358 U.S. 220. This so-called infringement test encompasses a two-part analysis: (1) whether the exercise of state court jurisdiction has been preempted by federal law,[9] or (2) whether the exercise of state court jurisdiction would infringe on the inherent sovereignty of an Indian tribe. Vega v. Medina,549 N.W.2d 507, 509 (Iowa 1996).
In this case, the federal preemption analysis is unnecessary since this court has already determined that there is no federal statute or treaty addressing this issue. In determining whether state jurisdiction would infringe on tribal sovereignty, several states have used a three-part test: (1) whether the parties involved are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected. Chino v. Chino, 561 P.2d 476, 479 (N.M. 1977); Vegav. Medina, 549 N.W.2d 507, 509-10 (Iowa 1996); Jackson CountyCT Page 10298Child Support Enforcement Agency v. Swayney, 352 S.E.2d 413
(N.C. 1987), cert. denied, 484 U.S. 826 (1987); and Anderson v.Beaulieu, 555 N.W.2d 537 (Minn.App. 1996); Charles v. Charles,
19 CONN. L. RPTR. No. 13, 444 (July 28, 1997, Booth, J.).
Applying the test to the facts in this case,[10] the parties are nonmembers of the Mohegan tribe and are residents of the state of Connecticut. The underlying action appears to have taken place in part on the reservation and in part in the state of Connecticut. This court assumes that economic self-determination is at the core of the tribe's interest in this matter. However, the Tribe's interest is significantly weakened since the tribe is neither a party to this action nor are tribal assets at stake. On the other hand, the state of Connecticut has a real interest in adjudicating disputes that arise between its citizens.
This court concludes that an analysis of the Chino factors used to determine whether state jurisdiction would infringe on inherent tribal sovereignty reveals that the state of Connecticut has a very real interest in adjudicating this dispute and that the tribal sovereignty of the Mohegan tribe would not be infringed thereby.
3. Tribal Exhaustion
Lastly, the defendants assert that while the state may have jurisdiction over this matter, this court should defer jurisdiction to the tribal court as a matter of comity.
The exhaustion of tribal remedies doctrine provides that "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies."[11] Tillet v. Lujan, 931 F.2d 636, 640 (10th Cir. 1991). "This rule applies to cases in which the tribal court's jurisdiction is at issue . . . and its application does not depend upon the existence of a pending action in the tribal forum.[12] (Citations omitted.) Texaco, Inc. v. Zah,5 F.3d 1374, 1376 (10th Cir. 1993). The exhaustion requirement is a federal rule and is not directly binding on state courts. SeeKlammer v. Lower Sioux Convenience Store, 535 N.W.2d 379
(Minn.App. 1995). CT Page 10299
In Strate v. A-1 Contractors, supra, 65 U.S.L.W. 4298, the United States Supreme Court recently clarified the scope of the federal doctrine of exhaustion of tribal remedies. The Court reiterated that tribal exhaustion is a "prudential rule" and does not expand the adjudicatory authority of Indian tribes.Id. 4302. Indeed, the doctrine is limited to those cases where tribal jurisdiction is challenged in some way, usually by collateral action brought in federal court. Id. The rule requires that a tribal court be permitted to determine first whether it has jurisdiction over a case. Id. The rule assumes that a party will be free to contest a tribal court's assertion of jurisdiction in a subsequent federal action. Id.
While the Court's teaching on the exhaustion rule inStrate is instructive for federal courts, whether the abstention principles underlying the rule are workable within the context of state authority over Indian tribes is far from clear. At least one state court has applied the rule. SeeKlammer v. Lowers Sioux Convenience Store, 535 N.W.2d 379
(Minn.App. 1995). In Klammer, the Minnesota Appellate Court applied the doctrine stating that "unconditional access to state court would . . . impair the tribal court's authority."Id. 388. However, the court failed to articulate precisely how the doctrine fit within the context of the limited jurisdictional reach of both the state and the tribe.
Upon review of the case law addressing the tribal exhaustion rule, this court does not believe that an "exhaustion" type principle is applicable to the facts in this case. The tribal court's jurisdiction has not been challenged, and there appears to be no question of Connecticut's personal jurisdiction over the parties.
IV. Conclusion
The defendants' motion to dismiss is denied on the grounds (1) that the defendants are not tribal members and therefore may not assert tribal sovereign immunity, (2) the doctrine of exhaustion of tribal remedies is not binding on state courts and does not fit the facts of this particular case, and (3) the exercise of state court jurisdiction would neither infringe on the authority of the federal government nor interfere with the Mohegan tribe's ability to make their own laws and be ruled by them. CT Page 10300
Handy, J.