[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
On April 20, 1998, Betty Ann Conroy, Louis Pergiovanni, James Gillis, John Rattigan, Robert Mattison, William A. Chesters, Allen Rocha, Howard Gravely, Michael Farnum, Walter Swepson, Paul Rabtoy, Scott Khoury, Edward Plantamuro, Simon Gonzales, Russell Taylor, and Michael Nadrich (hereinafter the "plaintiffs") filed a verified complaint against Foxwood's Casino Dealer's Toke Committee, c/o Richard Pullen and Christy Newman (hereinafter the CT Page 2979 "defendant") alleging damages for the wrongful and intentional conversion of the plaintiffs' property. The claim arises out of the defendant's alleged refusal to pay monies allegedly owed to the plaintiffs.
According to the allegations in the complaint, the plaintiffs were employed by the Foxwood's Resort and Casino[1] as "Grave Shift Dealers" during the period from March 26, 1994 through March 22, 1997. The defendant, a voluntary association of dealers employed by Foxwood's Resort and Casino, is responsible for the collection, management and distribution of "tip" or "toke" monies earned by dealers.[2] The defendant is governed by its own set of by-laws, which provide detailed procedures and methods of calculating "toke rates" and "toke hours." According to the plaintiffs, on or about March 26, 1994, the defendant violated its by-laws by arbitrarily reducing toke rates and hours. The plaintiffs, as a result, have suffered a loss of income or wages.
On June 12, 1998, the defendant filed a motion to dismiss the complaint on the grounds that the court lacks subject matter jurisdiction and personal jurisdiction, and that the plaintiffs failed to exhaust tribal remedies. On July 1, 1998, the plaintiffs filed a memorandum in opposition to the defendant's motion to dismiss.
 DISCUSSION
"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) Johnson v. Department of Public Health,48 Conn. App. 102, 108, 710 A.2d 176 (1998). "The grounds which may be asserted in [a motion to dismiss] are [inter alia]: (1) lack of jurisdiction over the subject matter; [and] (2) lack of jurisdiction over the person. . . ." Zizka v. Water PollutionControl Authority, 195 Conn. 682, 687, 490 A.2d 509 (1985), citing Practice Book § 10-31 (formerly § 143). "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." Carl J. Herzog Foundation, Inc. v.Univ. of Bridgeport, 41 Conn. App. 790, 793, 677 A.2d 1378
(1996). However, "[a] ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . [Rather,] [m]otions to dismiss are granted solely on jurisdictional ground[s]." (Citations omitted.) Discover Leasing, Inc. v. Murphy 33, CT Page 29802980 Conn. App. 303, 306-07, 635 A.2d 843 (1993). "It is well established that in ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence BrunoliInc. v. Branford, 247 Conn. 407, 410, ___ A.2d ___ (1999).
The defendant first argues that this court lacks subject matter jurisdiction because the plaintiffs' complaint concerns matters involving the operations of the Mashantucket Pequot Tribe[3] (hereinafter the "Tribe") and the defendant, which is a tribal organization; thus, exercise of state court jurisdiction would impermissibly infringe on the right of the Tribe to govern themselves. The plaintiffs respond by arguing that the dispute involves non-members of the Tribe who all live off of the Reservation, and the Tribe has no interest in the money which is in dispute; thus, the Tribe will neither lose nor gain anything from the outcome of this action.
"Like all instrumentalities of the state of Connecticut, our courts are powerless to intervene in the exercise of tribal self-government. . . . Any action by a state court that infringed on tribal sovereignty or interfered in tribal self-government would therefore be improper." (Citations omitted; internal quotation marks omitted.) State v. Sebastian, 243 Conn. 115, 159,701 A.2d 13 (1997). "[A]bsent governing Acts of Congress, the question has always been whether state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269,3 L.Ed.2d 251 (1959); see also Three Affiliated Tribes of FortBerthold v. Wold Engineering, 476 U.S. 877, 893, 106 S.Ct. 2305,90 L.Ed.2d 881 (1986); Golden Hill Paugussett Tribe of Indiansv. Southbury, 231 Conn. 563, 574-75, 651 A.2d 1246 (1995);Schaghticoke Indians of Kent, Conn., Inc. v. Potter,217 Conn. 612, 628-29, 587 A.2d 139 (1991). "This so-called infringement test encompasses a two-part analysis: (1) whether the exercise of state court jurisdiction has been preempted by federal law, or (2) whether the exercise of state court jurisdiction would infringe on the inherent sovereignty of an Indian tribe. . . . In determining whether state jurisdiction would infringe on tribal sovereignty, several states have used a three-part test: (1) whether the parties involved are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected. . . ." CT Page 2981 (Citations omitted.) Cuprak v. Sun International Hotels Limited, Superior Court, judicial district of New London at Norwich, Docket No. 112045 (October 9, 1997, Handy, J.) (20 Conn. L. Rptr. 625, 627); see also Charles v. Charles, Superior Court, judicial district of New London at New London, Docket No. 536362 (May 7, 1997, Booth, J.) (19 Conn. L. Rptr. 444).
In the present case, the parties have not raised, and independent research has not revealed, any issue of federal preemption. Applying the infringement test to the present case, the parties are nonmembers of the Tribe and are residents of the state of Connecticut.[4] Although the cause of action arose within the Reservation, the Tribe's interest appears to be minimal. The Tribe is not a party to the action, and does not face an economic loss if the plaintiffs were to successfully recoup money allegedly owed to them from the defendant. Moreover, the defendant's own affidavit attests to this fact: "The M.P.G.E. [Mashantucket Pequot Gaming Enterprise] assumes no responsibilityor liability for the tips or distribution of the pooled amounts."[5] (Emphasis added.) Affidavit of Richard Tesler, Exhibit B, ¶ 4. The defendant's by-laws also indicate that the dealers and the defendant, not the Tribe, have an ownership interest in the toke money. See Toke Committee By-Laws, Article VI, § A; see also Affidavit of Betty Ann Conroy, ¶ 5; Affidavit of Richard Tesler, Exhibit B, ¶ 2(C).
The state of Connecticut has an interest in adjudicating disputes between Connecticut citizens. The Tribe's right to self-govern is not infringed by the court's exercise of jurisdiction in the present case. Although the most significant acts of the defendant, of which the plaintiffs complain, took place on the Reservation, the Tribe does not face an identifiable loss upon the outcome of this matter. Therefore, the court has jurisdiction over the subject matter of this action, and the motion to dismiss on this ground is denied.
The defendant next argues that the court lacks personal jurisdiction because the defendant-committee was not created under Connecticut law, does not maintain offices in Connecticut, and operates solely on the Reservation of the Mashantucket Pequot Tribe. The plaintiffs argue that there is personal jurisdiction over the defendant because the defendant is an association of individuals who all live in the state of Connecticut, the association maintains a bank account in this state, and the defendant's agents were personally served while in the state. CT Page 2982
"In many cases jurisdiction is immediately evident, as where the sheriff's return shows abode service in Connecticut. . . . When jurisdiction is based on personal or abode service, the matters stated in the return, if true, confer jurisdiction." (Citations omitted; internal quotation marks omitted.) StandardTallow Corp. v. Jowdy, 190 Conn. 48, 52-53, 459 A.2d 503 (1983). "[A]ny natural person within the geographical boundaries of Connecticut can be brought within the jurisdiction of the courts of the state by personal service of process on him within the state." R. Bevacqua Bollier et al., Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 21, p. 46. An unincorporated voluntary association, "may sue and be sued . . . by such name." General Statutes § 52-76; see also Hartford Accident Indemnity Co. v. Sena, 42 Conn. Sup. 336, 344, 619 A.2d 489
(1992) ("a civil action may be brought against members of an unincorporated voluntary association in addition to the association itself"). "It is also clear from case law that not only are members of an unincorporated association able to be sued, they are also liable individually." Hartford Accident Indemnity Co. v. Sena, supra, 42 Conn. Sup. 344.
In the present case, the defendant is alleged to be a voluntary association of individuals who are nonmembers of the Tribe, none of whom live on the Reservation. See Affidavit of Betty Ann Conroy, ¶¶ 1,2. The defendant was served with process through its co-chairpersons. Pursuant to General Statutes §6-32, the Deputy Sheriff made a true return of the writ, in which he verified that the co-chairpersons of the defendant-committee were served at their places of abode. The return indicates that the defendant, through its co-chairpersons, was personally served with process while physically present in the state of Connecticut. Therefore, this court has personal jurisdiction over the defendant, and the motion to dismiss on this ground is denied.
The defendant's third and final argument for dismissing the complaint relates to the plaintiffs' failure to exhaust tribal remedies. The defendant argues that this court should abstain from exercising jurisdiction because the plaintiffs have failed to exhaust tribal remedies. The plaintiffs respond by arguing that the exhaustion doctrine does not apply to state courts, and furthermore, applies only when there is an action pending in the tribal court. CT Page 2983
"[The [exhaustion] doctrine is not jurisdictional; that is, it does not go to, affect, or depend directly upon, the jurisdiction of either the tribal or the nontribal court." Drummv. Brown, 245 Conn. 657, 674-75, 716 A.2d 50 (1998). "[T]he courts of this state must apply the exhaustion of tribal remedies doctrine." Id., 679. However "unless and until the jurisdiction of a tribal court has been invoked through the initiation of parallel proceedings in that forum, the exhaustion rule is inapplicable." Id., 686.
In the present case, neither of the parties have invoked the jurisdiction of a tribal court. Since there is no pending action before a tribal court, the exhaustion rule is inapplicable to the proceedings before this court. The motion to dismiss on this ground is denied.
 CONCLUSION
The defendant's motion to dismiss the plaintiffs' complaint is denied. First, the exercise of jurisdiction over the subject matter of the plaintiffs' complaint does not infringe on the Tribe's right to self-govern. Second, the defendant has been duly served with process while physically present in the state of Connecticut, and therefore, the court has personal jurisdiction. Third, the exhaustion of tribal remedies doctrine is inapplicable to the present case.
Accordingly, the motion to dismiss is denied.
D. Michael Hurley, Judge Trial Referee